STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-01-64

STATE OF MAINE

v.

GREGORY DAIGNEAULT,

Defendant

**ORDER ON MOTIONS
TO SUPPRESS**

This matter is before the court on defendant's motions to suppress. Shortly after 4:00 p.m. on December 27, 2000, a Maine State Police officer responded to a property damage automobile accident in Wayne. Because of the distance to be traveled, while enroute the officer allowed the vehicles to be moved to a parking area in order to avoid blocking traffic. When the officer arrived at the scene, he spoke briefly with the defendant who identified himself as the operator of one of the vehicles. The vehicle was still running with the driver's side window open five or six inches. The defendant was not wearing any outerwear and the weather was extremely cold. The officer offered the defendant an opportunity to sit in the heated cruiser while he investigated the accident.

The officer was advised by the operator of the second car that her vehicle had been struck by the defendant while it was parked. The officer then became curious as to the reasons why the defendant had struck a parked car on a straight, level highway in clear weather. The officer also noted significant damage to both vehicles. The officer returned to his cruiser after some investigation to ask the defendant the cause of the accident. In spite of repeated questions as to details, the officer could not get a satisfactory answer. Rather than advise what precisely caused the defendant to drive his vehicle into the parked car, the defendant insisted on explaining that he was not

familiar with the road, that he normally took another route home and that he had hit the vehicle coming out of a curve. Given these circumstances, the officer undertook a series of questions to determine why the defendant might be evasive to those questions. He asked defendant whether his driver's license was valid, whether there were any warrants for his arrest, or whether he was carrying anything in his vehicle of concern. All the answers were negative but the defendant appeared to be showing signs of nervousness, particularly at the questions relating to whether there were contents in his vehicle of concern. During this period of time, the officer was also completing the various forms necessary for accident investigation.

There also was some evidence of physical impairment exhibited by the defendant. On two occasions he dropped a piece of paper on the floor of the cruiser and on one occasion he attempted to rest his elbow on the door of the cruiser but was unsuccessful. Since, to the officer's observation, the defendant exhibited no signs of alcohol, including the odor, the officer inquired whether the defendant was on medication and subsequently whether he was supposed to be on medication, receiving a negative answer in both cases. Each individual observation was causing the officer to be concerned that the defendant may be under the influence of drugs.

The investigating officer then made arrangements through his police agency to have the defendant"s vehicle examined by another officer with a canine unit. Subsequent to making the request, and realizing that the canine officer was some 20 to 25 minutes away, the officer decided to conduct a series of field sobriety tests with the defendant. Exiting the cruiser, he allowed the defendant an opportunity to retrieve his outerwear jacket from his vehicle. While the defendant did poorly on the field sobriety tests, the officer allows that the bitter cold of the early evening would have made it

2

difficult so he tempered his conclusions with respect to the tests, although the officer testified that he demonstrated the tests before asking the defendant to perform and he, the officer, was able to do them without difficulty.

There was an additional delay after the field sobriety tests but before the arrival of the canine unit during which time the officer was continuing to complete his investigative report. It would appear from the Maine State Police records that the canine unit arrived at the scene 1 hour and 12 minutes after the investigating officer first arrived at the scene.[1]

Following procedure for which he and his canine unit were trained, the canine officer inquired of the defendant whether he could open the door and turn off the engine of the defendant's vehicle. Consent was given and the officer then opened the driver's door, turned off the ignition, and closed the door. He then conducted a walk around of the vehicle with the dog. The dog responded to the driver's side door by sitting down and thereby giving the appropriate signal for finding the scent of illegal substance strongest at that position. The canine officer asked the defendant if he could enter the vehicle but received a denial. Notwithstanding that denial, the officer opened the door and allowed the dog into the vehicle. The dog first responded to a pair of jeans, at the location of a particular pocket, but then immediately went to a backpack and settled at that location as the strongest indicator of the substance. The officer removed the backpack from the vehicle and the dog again indicated its identification as containing the contraband. The backpack was open wherein a large amount of

---

[1] Shortly after arriving at the scene, the investigating officer was diverted to a nearby commercial location to investigate the activation of a burglar alarm. This apparently took a few minutes of his time. It was before he had even identified the defendant as a participant in the motor vehicle accident.

3

marijuana was found. Subsequently, the investigating officer examined the jeans finding a large amount of cash, more marijuana, and a packet of white powder ultimately tested to be cocaine. Upon this discovery, the defendant was arrested and taken to the Kennebec County Correctional Facility where, after appropriate *Miranda* warning, he discussed the matter with the officer.

Three motions to suppress were filed by the defendant. The first motion challenges the admission of statements made by the defendant to the officer while he was in the trooper's cruiser. The second motion challenges the admissibility of the road side field sobriety tests. The third motion to suppress challenges the admission of the material found in the search of the defendant's vehicle and the statements made by defendant at the Kennebec County Correctional Facility after *Miranda* warning.

A full testimonial hearing of all three motions was conducted and the parties were given an opportunity to submit written argument and memoranda of law. In the defendant's memorandum, he confines himself to a single challenge that, "The continued detention of Mr. Daigneault after the time necessary for officers to investigate and complete the accident report was unreasonable and exceeded the scope of intrusion allowed under *Terry v. Ohio*, 392 U.S. 1 (1968)." He argues that the reason for the initial detention had long dissipated by the time the canine unit had arrived and that no reasonable or articulable suspicion arose during the detention that would indicate that the defendant possessed drugs in his vehicle. There does not appear to be any substance to challenge the statements made by the defendant while in the officer's cruiser and his statements at the jail post-*Miranda*. The defendant had been invited into the cruiser to stay warm even when the officer was not present and the inquiries made were related to routine automobile accident investigatory matters. There was no

4

reason to suggest that the defendant was not free to leave and his motor vehicle, although damaged, appeared to remain operable while all parties were in the middle of a public parking area. The circumstances giving rise to the conversation related to an unexplained automobile accident which, absent other considerations, would not have involved any criminal offenses. Even though the officer was becoming increasingly suspicious as the conversation wore on, there is no evidence to suggest that the defendant was not fully aware that he was still being detained solely for the purpose of the completion of an accident investigation.

Further, there does not appear to be any evidence of any deviation from standard of *Miranda* practice. It is clear that the defendant understood the warnings that were given and answered the officer's questions with full cognizance of his rights.

This, then, leaves us to the issue of whether or not the activities constituted an unreasonable detention of the defendant tainting the constitutionally acceptable examination of the exterior of his vehicle which gave rise to probable cause for the search.

Defendant does not challenge the ultimate warrantless search by the canine unit. He recognizes that a dog sniff is not a search or seizure under the Fourth Amendment in accordance with *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993)) and that once a qualified dog reacts appropriately to a vehicle, a warrantless search is permissible, quoting *U.S. v. Zucco*, 71 F.3d 188, 191-92 (5th Cir. 1995). The defendant does challenge his detention so that the sniff and search procedure by the canine unit could be accomplished.

Defendant relies on *Florida v. Royer*, 460 U.S. 491, 500 (1983) for the proposition that, "An investigative detention must be temporary and last no longer than is

necessary to effectuate the purpose of the stop." Defendant argues that the court could reasonably infer from the testimony and the evidence that when the investigating officer requested the canine unit, he estimated approximately 15 to 20 additional minutes would be required to complete the work remaining with regards to the accident report. He further asserts that since the officer completed his accident report in 10 minutes after completion of the field sobriety tests and the 35 to 40 minutes taken by the canine unit to arrive, that the defendant was unlawfully detained for at least 20 minutes and possibly 30 minutes awaiting the arrival of the dog. Defendant argues that the delay was not necessary to complete the purposes of the original investigatory stop and that when that purpose no longer existed, the lawful detention ceased to exist. Under such circumstances, defendant argues that the illegal detention caused the canine operation to be the fruit of an illegal detention. *U.S. v. Dortch*, 199 F.3d 193 (5th Cir. 1999).

The defendant believes that the field sobriety tests were a pretext upon which there was no reasonable basis justified by the officer. He believes the officer was "dragging his heels" in completing the accident reports in order to unlawfully detain the defendant. Finally, the defendant challenges the presence of any reasonable or articulable suspicion that the defendant possessed drugs in his vehicle. In this regard, the defendant challenges the multiple basis upon which the officer testified that he believed the defendant was involved with something affecting him.

The State argues that an officer may detain an individual, based upon reasonable and articulable safety concerns, suspicion that the defendant has committed a crime, or suspicion that the defendant has committed a traffic infraction. *State v. Gulick*, 759 A.2d 1085, 1088 (Me. 2000). To the charge by defendant that this officer's detention became a

*de facto* arrest under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the State relies on *United States v. Owens*, 167 F.3d 739, 748-749 (1st Cir. 1999). This case causes the court to evaluate the existence of a *de facto* arrest by applying a two-prong test. First, to determine whether the officer's actions were justified at the inception of the stop and, secondly, whether the actions by the officer were reasonably responsive to the circumstances justifying the stop in the first place and also considering the additional information that may be obtained by the officers during the stop. The decision further directs the court to examine:

> Whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making its assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second guessing.

*United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Ultimately, this court must decide on a fact specific basis whether the officer had sufficient reasonable interpretation of information to suggest the presence of drugs in the defendant's vehicle such that would justify the detention as described and the ultimate search. The cases are replete with circumstances in which a detaining officer detects nervous activity on the part of defendant. In some cases the courts have found it sufficient to create the suspicion and ultimately the probable cause and in other cases the courts have found it insufficient. The failure of the defendant to adequately respond to the motor vehicle operation questions of the officer certainly would reasonably create a suspicion in the officer of either an unlawful activity in the operation or some impairment on the part of the defendant. The physical coordination of the defendant, particularly as he appeared to become more nervous and evasive, would add to that

7

suspicion. The administration of the field sobriety tests, although largely discounted, nevertheless provided some additional basis for concerns in the officer. It seems reasonable to this court that the officer would have cause to believe that the defendant was showing sufficient signs of impairment or influence to suggest the presence of a controlled substance.

However, it still raises the questions of whether or not the 20 to 30 minute delay alleged affected the lawfulness of the detention. This incident took place in a relatively rural area where both officers were removed from the scene such that there was delay in arriving at the site. Not all officers have canine units and a 30 to 40 minute travel time to arrive at a scene is neither unusual nor unreasonable. In addition, this court is not satisfied that the evidence clearly indicates that period of time was a factual delay. From the time the investigating officer arrived at the scene to the time of the arrival of the canine call was 1 hour and 12 minutes. Some period of time transpired when the officer arrived before he initiated his investigation in order to respond to the burglar alarm. In addition, it was necessary for him to interview the operator of the parked car, to examine the cars and make an assessment of damage and to view the scene of the impact which was some short distance away. It does not appear clear from the evidence that the normal investigation of the accident for a 40 to 50 minute period would be unusual, particularly where an operator was not being properly responsive to the officer's questions. Indeed, in this evidence, it may have been that the period of actual detention was of a shorter duration.

Finally, the court is not satisfied that this individual was in a true custodial state up to the time of his arrest. At the very most, he entered the cruiser in response to the officer's invitation.

Under all of the circumstances, the court is not satisfied that there was an unlawful search as the result of an unlawful detention and that defendant's constitutional rights to be free from unlawful search and seizure has been implicated under these facts.

The entry will be:

Defendant's motions to suppress are DENIED.

Dated: November 7, 2001

Donald H. Marden
Justice, Superior Court

STATE OF MAINE
  vs
GREGORY S. DAIGNEAULT
    WEBBER AVENUE
LEWISTON ME 04240

DOB: 12/12/1964
Attorney: LEONARD SHARON
          RETAINED 02/20/2001

Filing Document: INDICTMENT
Filing Date: 12/27/2000

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CR-2001-00064

**DOCKET RECORD**

State's Attorney: LARA NOMANI

Major Case Type: MISDEMEANOR (CLASS D,E)

## Charge(s)

1   AGGRAVATED TRAFFICK OR FURNISH SCHEDULE     12/27/2000 WAYNE
    DRUGS
    17-A    1105              Class B

2   AGGRAVATED TRAFFICK OR FURNISH SCHEDULE     12/27/2000 WAYNE
    DRUGS
    17-A    1105(1)(A)         Class B

3   UNLAWFUL POSSESSION OF SCHEDULED DRUGS     12/27/2000 WAYNE
    17-A    1107(1)            Class D

4   CRIMINAL FORFEITURE OF PROPERTY           12/27/2000 AUGUSTA
    15      5826              Class U

## ocket Events:

02/21/2001 FILING DOCUMENT - INDICTMENT FILED ON 12/27/2000

02/21/2001 Charge(s):  1,2,3,4
           HEARING - ARRAIGNMENT SCHEDULED FOR 02/26/2001 @ 8:15

           NOTICE TO PARTIES/COUNSEL
02/21/2001 SUMMONS - SUMMONS TO APPEAR FOR ARRAIGN ISSUED FOR 02/26/2001 @ 8:15

02/21/2001 ATTORNEY - RETAINED ENTERED ON 02/20/2001

           Attorney:  LEONARD SHARON
           ATTORNEY FOR PARTY 002 DEFENDANT
02/27/2001 Charge(s):  1,2,3,4
           HEARING - ARRAIGNMENT HELD ON 02/26/2001
           DONALD H MARDEN , JUSTICE
           Attorney:  LEONARD SHARON

           DA:  LARA NOMANI          Reporter: CASE ENOCH
           Defendant Present in Court
           READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
           DEFENDANT.  21 DAYS TO FILE MOTIONS
02/27/2001 Charge(s):  1,2,3,4
           PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 02/26/2001

 2/27/2001 BAIL BOND - CASH BAIL BOND SET BY COURT ON 02/26/2001

                                                         Printed on: 11/07/2001

DONALD H MARDEN , JUSTICE
SAME AS SET IN DC, BAIL TO TRANSFER
02/27/2001 BAIL BOND - CONDITIONS OF RELEASE ISSUED ON 02/26/2001


03/01/2001 ATTORNEY - APPOINTED ORDERED ON 02/26/2001


Attorney: LARA NOMANI
ATTORNEY FOR PARTY 001 PLAINTIFF
03/21/2001 MOTION - MOTION FOR EXTENSION OF TIME FILED BY DEFENDANT ON 03/19/2001


FOR FILING OF PRETRIAL MOTIONS -NO OBJECTION BYSTATE
03/22/2001 MOTION - MOTION FOR EXTENSION OF TIME GRANTED ON 03/21/2001

GIVEN TO MARCH

COPY TO PARTIES/COUNSEL
26,2001 TO FILE MOTIONS
03/28/2001 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 03/26/2001


TO SUPPRESS EVIDENCE SEIZED FROM THE VEHICLE
03/28/2001 OTHER FILING - OTHER DOCUMENT FILED ON 03/26/2001
DONALD H MARDEN , JUSTICE
REQUEST FOR PRESENCE OF CHEMIST AT TRIAL. GRANTED W/O OBJECTION ON 8/8/01.
03/28/2001 MOTION - OTHER MOTION FILED BY DEFENDANT ON 03/26/2001


MOTION FOR ACCESS TO EVIDENCE FOR INDEPENDENT TESTING FILED.
03/28/2001 MOTION - MOTION EXPERT WITNESS REPORT FILED BY DEFENDANT ON 03/26/2001


;/28/2001 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 03/26/2001


03/28/2001 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 03/26/2001


MOTION TO SUPPRESS STATEMENTS.
03/28/2001 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 03/26/2001


MOTION TO SUPPRESS EVIDENCE.
03/28/2001 MOTION - MOTION IN LIMINE FILED BY DEFENDANT ON 03/26/2001


TO EXCLUDE THE HORIZONTAL GAZE NYSTAGMUS TEST
03/28/2001 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 03/26/2001


TO SUPPRESS STATEMENTS
04/20/2001 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 05/07/2001


NOTICE  TO PARTIES/COUNSEL
04/20/2001 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 04/20/2001


NO OBJECTION BY NOMANI, AAG
05/18/2001 BAIL BOND - CASH BAIL BOND FILED ON 05/18/2001


Bail Receipt Type: CR
Bail Amt: $1,500
Receipt Type: CK
Date Bailed: 12/28/2000      Prvdr Name: ROBERT  BERG

Printed on: 11/07/2001

Rtrn Name: ROBERT    BERG

## Conditions of Bail:
07/16/2001 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 08/08/2001 @ 9:00

NOTICE   TO PARTIES/COUNSEL
08/14/2001 MOTION - MOTION FOR DISCOVERY GRANTED ON 08/08/2001
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL. GRANTED WITH PREJUDICE
08/14/2001 MOTION - MOTION EXPERT WITNESS REPORT MOOT ON 08/08/2001
DONALD H MARDEN , JUSTICE
08/14/2001 MOTION - OTHER MOTION GRANTED ON 08/08/2001
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL.  AGREEMENT W/O DELAY IN TEST.
08/15/2001 OTHER FILING - TRANSCRIPT ORDER FILED ON 08/13/2001

Attorney:  LEONARD SHARON
COPY TO COURT REPORTER
09/12/2001 OTHER FILING - TRANSCRIPT FILED ON 09/11/2001

ON MOTION TO SUPPRESS HELD ON 8/8/01 BEFORE JUSTICE MARDEN
09/20/2001 HEARING - MOTION TO SUPPRESS HELD ON 08/08/2001
DONALD H MARDEN , JUSTICE
Attorney:  LEONARD SHARON                         .

DA:  LARA NOMANI
Defendant Present in Court
TAKEN UNDER ADVISEMENT.
09/20/2001 MOTION - MOTION FOR EXTENSION OF TIME FILED BY DEFENDANT ON 09/20/2001

FOR FILING BRIEF.  NO OBJECTION.
10/05/2001 MOTION - MOTION FOR EXTENSION OF TIME GRANTED ON 09/28/2001
THOMAS D WARREN , JUSTICE
COPY TO PARTIES/COUNSEL
10/05/2001 BRIEF - PETITIONERS BRIEF FILED ON 10/05/2001

10/09/2001 MOTION - MOTION FOR EXTENSION OF TIME FILED BY STATE ON 10/09/2001

10/15/2001 MOTION - MOTION FOR EXTENSION OF TIME GRANTED ON 10/11/2001
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
10/15/2001 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 08/08/2001

TAKEN UNDER ADVISEMENT.
10/15/2001 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 08/08/2001

10/15/2001 BRIEF - STATES BRIEF FILED ON 10/15/2001

11/07/2001 MOTION - MOTION TO SUPPRESS DENIED ON 11/07/2001
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
_1/07/2001 MOTION - MOTION TO SUPPRESS DENIED ON 11/07/2001

DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
11/07/2001 MOTION - MOTION TO SUPPRESS DENIED ON 11/07/2001
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST:  _____
Clerk